# EXHIBIT A



### *Lawrence County, Pennsylvania*
#### **Prothonotary**

© 2018 *INFOCON CORPORATION*, All Rights Reserved

Log Off

2/9/2026 - 9:37 AM

| Functions |
| --- |
| ENTER |
| PAGE UP |
| PAGE DOWN |
| DONE |
| EXIT |
| DOCKETS |
| PDF CASE PRINT |
| E-MAIL CASE PRINT |
| ALTERNATE VIEW |
| BACK |
| TOP |
| BOTTOM |

Prothonotary - Inquiry - Case Detail- Alt. View

Case No: **2026-10064**   Filed Date/Time: **01/22/2026    2:05**

Case Type: **CONTRACT - EMPLOYMENT DISPUTE: OTHER**

Caption: **WILLIAM R KASTNER (vs) FIRST STUDENT INC**

Reference No:                          Judgment Amount:                $.00

Judge Assigned:                       Execution Date:     00/00/0000

Disposed Desc:                        Jury Trial?

Case Comments:                       Disposition Date:   00/00/0000

Higher Court 1:

Higher Court 2:

| Sel | General Index – Litigant Names | | Type |
| --- | --- | --- | --- |
| ☐ | KASTNER WILLIAM R | | PLAINTIFF |
| ☐ | FIRST STUDENT INC | | DEFENDANT |
| Bottom | | | |

| Sel | Judgment Index - Litigant Names | Amount | Description |
| --- | --- | --- | --- |
| | No Judgment Litigants On File | | |
| Bottom | | | |



### *Lawrence County, Pennsylvania*
### **Prothonotary**

Log Off

© 2018 *INFOCON CORPORATION*, All Rights Reserved

2/20/2026 - 8:21 AM

**Functions**

ENTER

DONE

EXIT

PDF CASE PRINT

E-MAIL CASE PRINT

BACK

Prothonotary - Inquiry - Dockets Entries

| Case No: | **2026-10064** | Filed Date/Time: | **01/22/2026** | **2:05** |
|---|---|---|---|---|
| Case Type: | **CONTRACT - EMPLOYMENT DISPUTE: OTHER** | | | |
| Caption: | **WILLIAM R KASTNER (vs) FIRST STUDENT INC** | | | |

Position to Date: 00/00/0000          Position to Page: ____ of 1

| Sel | Date | Description | Pages | Img |
|---|---|---|---|---|
| ☐ | 01/22/2026 | COMPLAINT IN CIVIL ACTION - EMPLOYMENT DISPUTE FILED OBO PLTF BY ATTY CHRISTOPHER PAPA, ESQ; ATTY SERVING; | 40 | ➤ |
| ☐ | 02/12/2026 | AFFIDAVIT OF SERVICE BY STAFF FILED; | 2 | ➤ |

Bottom

```
08332802202026              Lawrence County Prothonotary's Office              Page    1
PYSPRT                         Civil Case Detail Report                        2/20/2026
```

Case No......... 2026-10064  WILLIAM R KASTNER (vs) FIRST STUDENT INC

```
Reference No......                                    Filed..........    1/22/2026
Case Type......... CONTRACT - EMPLOYMENT             Time...........       2:05
Judgment..........          $.00                     Execution Date.    0/00/0000
Judge Assigned....                                   Jury Trial.....
Disposed Desc.....                                   Disposed Date..    0/00/0000
------------ Case Comments ------------              Higher Crt 1...
                                                     Higher Crt 2...
```

*********************************************************************************
### ++ GENERAL INDEX ++

**Indexed Party**                                    **Attorney Info**
KASTNER WILLIAM R                 PLAINTIFF           PAPA CHRISTOPHER A
  NEW CASTLE, PA 16101                                  318 HIGHLAND AVENUE
                                                        NEW CASTLE, PA  16101

FIRST STUDENT INC                 DEFENDANT
  CINCINNATI, OH 45202

*********************************************************************************
### ++ DOCKET ENTRIES ++

**Date**       **Entry Text**
- - - - - - - - - - - - - FIRST ENTRY - - - - - - - - - - - - - -
1/22/2026    COMPLAINT IN CIVIL ACTION - EMPLOYMENT DISPUTE FILED OBO PLTF BY
             ATTY CHRISTOPHER PAPA, ESQ; ATTY SERVING;
                         40 Image page(s) exists for this entry
             ----------------------------------------------------------------
2/12/2026    AFFIDAVIT OF SERVICE BY STAFF FILED;
                          2 Image page(s) exists for this entry
             - - - - - - - - - - - - - LAST ENTRY - - - - - - - - - - - - - -

*********************************************************************************
### ++ Escrow Information ++

| Cost / Fee       | Beg. Balance | Pymts/Adjmts | End. Balance |
|------------------|-------------:|-------------:|-------------:|
| JCP FEE          |      $41.25  |      $41.25  |       $.00   |
| ACT 164-98 AU    |       $5.00  |       $5.00  |       $.00   |
| SETTLE & DISC    |      $10.00  |      $10.00  |       $.00   |
| RECORD MNGT FEE  |      $10.00  |      $10.00  |       $.00   |
| COMPLAINT        |     $118.75  |     $118.75  |       $.00   |
| TAX ON CMPLT     |        $.50  |        $.50  |       $.00   |
|                  | ------------ | ------------ | ------------ |
|                  |     $185.50  |     $185.50  |       $.00   |

*********************************************************************************
### End of Case Information

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

LAWRENCE _____ County

| For Prothonotary Use Only: |
|---|
| Docket No: |



*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

---

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Transfer from Another Jurisdiction
- ☐ Petition
- ☐ Declaration of Taking

**Lead Plaintiff's Name:**
William R. Kastner

**Lead Defendant's Name:**
First Student Inc.

**Are money damages requested?** ☒ Yes ☐ No

**Dollar Amount Requested:** (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Christopher A. Papa, Esquire

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

---

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- _____
- ☐ Employment Dispute: Discrimination
- ☒ Employment Dispute: Other
- _____
- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

# NOTICE

**Pennsylvania Rule of Civil Procedure 205.5. (Cover Sheet) provides, in part:**

### Rule 205.5.    Cover Sheet

(a)(1)  This rule shall apply to all actions governed by the rules of civil procedure except the following:

      (i)  actions pursuant to the Protection from Abuse Act, Rules 1901 et seq.

      (ii)  actions for support, Rules 1910.1 et seq.

      (iii)  actions for custody, partial custody and visitation of minor children, Rules 1915.1 et seq.

      (iv)  actions for divorce or annulment of marriage, Rules 1920.1 et seq.

      (v)  actions in domestic relations generally, including paternity actions, Rules 1930.1 et seq.

      (vi)  voluntary mediation in custody actions, Rules 1940.1 et seq.

(2)  At the commencement of any action, the party initiating the action shall complete the cover sheet set forth in subdivision (e) and file it with the prothonotary.

(b)  The prothonotary shall not accept a filing commencing an action without a completed cover sheet.

(c)  The prothonotary shall assist a party appearing pro se in the completion of the form.

(d)  A judicial district which has implemented an electronic filing system pursuant to Rule 205.4 and has promulgated those procedures pursuant to Rule 239.9 shall be exempt from the provisions of this rule.

(e)  The Court Administrator of Pennsylvania, in conjunction with the Civil Procedural Rules Committee, shall design and publish the cover sheet.  The latest version of the form shall be published on the website of the Administrative Office of Pennsylvania Courts at www.pacourts.us.

IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

WILLIAM R. KASTNER

    Plaintiff

vs.

FIRST STUDENT, INC.

    Defendant

NO. 10004 _____ of 2026, C.A.

TYPE OF PLEADING:
**COMPLAINT**

FILED ON BEHALF OF:
**WILLIAM R. KASTNER**

COUNSEL FOR THIS PARTY:
Christopher A. Papa, Esquire
Papa LLC
Supreme Court #203485
318 Highland Avenue
New Castle, PA 16101

1

IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

WILLIAM R. KASTNER           :
                             :
            Plaintiff        :
                             :   NO. 10064 ___ of 2026, C.A.
vs.                          :
                             :
FIRST STUDENT, INC.          :
                             :
            Defendant        :

## CERTIFICATE OF COMPLIANCE:

I certify that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that
require filing confidential information and documents differently than non-confidential
information and documents.

Christopher A. Papa, Esquire

2

IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

WILLIAM R. KASTNER

        Plaintiff

vs.

FIRST STUDENT, INC.

        Defendant

NO. 10004 _____ of 2025, C.A.

## NOTICE TO DEFEND AND CLAIM RIGHTS

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Lawrence County Government Center
430 Court Street
New Castle, PA 16101
(724) 656-1921

### AMERICANS WITH DISABILITIES ACT OF 1990

The Court of Common Pleas of Lawrence County is required to comply with the Americans with Disabilities Act of 1990. For information about accessible facilities and reasonable accommodations available to disabled individuals having business before the Court, please contact our office. All arrangements must be made at least 72 hours prior to any hearing or business before the Court. You must attend the scheduled conference or hearing.

3

IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

WILLIAM R. KASTNER

        Plaintiff

vs.

FIRST STUDENT, INC.

        Defendant

NO. 100104 of 2025, C.A.

## COMPLAINT

NOW COMES the Plaintiff, William R. Kastner, by and through his legal counsel, Attorney Christopher A. Papa, Esquire and hereby files this Complaint, respectfully stating as follows:

1. Plaintiff is William R. Kastner, an adult individual residing at 122 Oakwood Ave., New Castle, PA 16101, hereinafter referred to as "Plaintiff".

2. Defendant is First Student Inc. a corporation with principal place of business located at 191 Rosa Parks Street, 8th Floor, Cincinnati, OH 45202, hereinafter referred to as "Defendant".

3. Plaintiff has been a reliable, popular, hardworking, honest, caring student bus driver since 2019.

4. He worked for Glade Run Lutheran Services as a Youth Care Worker from 2019 through 2022, transporting students to court hearings in the surrounding areas. Plaintiff would

4

also drive students for other activities. Further, he worked at Lark enterprises with adult disability individuals.

5. Plaintiff has been a student bus and van driver for First Student Inc. since March of 2025.

6. Plaintiff has reliably not missed any days of work for the past two years in his role as a bus driver.

7. He has valued his position as a reliable and dedicated driver. There are many personal testimonies from present and past students, parents and grandparents, speaking to his personal character, integrity, and honesty. See attached; Exhibit A. Letters from Parents and Grandparents.

8. Plaintiff has had a positive impact on the entire community and on many lives throughout his employment as a driver. His compassion and heart were a valuable part of his daily driver responsibilities. Parents/grandparents felt that their children were, "safe, valued and supported" by Plaintiff. See Exhibit B. Letter from Grandparent of Student.

9. Plaintiff's child abuse clearances are all-current and show "NO RECORD EXISTS", giving him an impeccable record of service. Plaintiff also has continuing education hours that meet the "Recognizing and Reporting Child Abuse: Mandated and Permissive Reporting in Pennsylvania", which are also current. See Exhibit C; Clearances.

10. Plaintiff has been an active member in the community and lives of his students. As

stated by parents, his character has "always demonstrated a high level of professionalism and kindness. He has gone above and beyond in his role as a driver by supporting the children's activities. He has attended nearly every school and private school event, including band concerts, chorus performances and parades of students he drives. His presence has always been one of encouragement and positivity – never anything else". In his role as an active community member, Plaintiff has been seen taking photographs with students, with parents behind the camera, innocently placing his arm around the students. See Exhibit D; Letter from parent and photographs.

11. On October 1, 2025, Plaintiff received an unexpected and shocking letter from Steven Hovis, Location Manager for First Student Inc. officially Terminating his Employment. See Exhibit E; Termination Letter.

12. Allegations were set forth in regard to Plaintiff that on September 11th, 2025, Plaintiff put his arm around a student and allowed students to sit up in the front of the van. Other instances of "unwarranted touching" were allegedly witnessed from a purported video made in the vehicle. See Exhibit E; Termination Letter.

13. Plaintiff vehemently denies ever engaging in any "inappropriate or unwarranted touching" of any student. Plaintiff was never shown the purported video and plaintiff questions whether this video actually exists.

14. The only factual event on September 11, 2025 that Plaintiff can recall is that when the van he was driving pulled up to the school to the drop off spot, a 12 year old student was

6

extremely nervous at seeing a certain teacher who was getting the students off the bus that she was uncomfortable with. The student approached the Plaintiff voicing her concerns, as the Plaintiff was a trusted and beloved driver, and Plaintiff simply placed his arm over the students shoulder telling her it would be fine to comfort her.

15. First Student Inc. lists on page 38 of their employee handbook, under Section 7., part A., "inappropriate or unwarranted touching of a passenger or employee", as employee misconduct.  See Exhibit F.; Page 38 of employee handbook.

16. Plaintiff has stated and seen many other employees and staff giving innocent hugs to students without any issues or termination of their employment.  Plaintiff and students have a good rapport and an innocent hug was meaningless and/or obviously not considered "unwarranted touching".

17. Plaintiff was told by Steven Hovis (Terminal Manager) that he or a teacher made a call to ChildLine on September 12, 2025, in the morning.  Plaintiff was told he could not continue driving in the afternoon of September 12, 2025, as well as Monday, September 15th, 2025.

18. Plaintiff was told by Steven Hovis that a letter would be mailed by the state regarding a determination of whether the purported conduct was unfounded and he would get back pay.  Mr. Hovis stated he reviewed the purported video and that it would not be discussed with Plaintiff and that it would be sent out to the state.

19. On September 17, 2025, Plaintiff got a call from the Chief of Police of Lancaster

7

Township, Butler County to come in for an interview and the Plaintiff agreed, having nothing to hide and doing nothing wrong. Plaintiff's rights were read to him and Plaintiff signed off on not needing an Attorney at that time. Plaintiff was questioned about the day he was terminated in regards to the allegations set forth seen in the purported video.

20. Plaintiff was asked by the Chief of Police, "Why was the student allowed to sit in the front seat"? Plaintiff responded by stating that the student has a medical condition called Cold Urticaria. With this medical condition, temperature control is important. During the meeting with the Chief of Police, the allegations of putting an arm around the student were never brought up. See Exhibit G. Medical Condition.

21. There is no employment policy regarding students sitting up front and Plaintiff is unaware of any rule forbidding students from sitting up front if they need to on a case by case basis.

22. Since his termination, it has come to Plaintiff's attention that his replacement driver also lets certain students sit up front in the van with no negative consequence to his employment.

23. Curiously and suspiciously, Plaintiff was supposed to receive a signing bonus by First Student Inc. in the amount of $7,500.00 on the day he was fired. Plaintiff never received this bonus that is due and owing. Plaintiff's wife, who is also a student bus driver, received her bonus on October 1, 2025.

24. Plaintiff has not received any communication from the state or Childline regarding the false allegations. Plaintiff is not confident that Childline was ever actually involved.

8

25. Plaintiff has attempted to reach out to Human Resources Manager, Tina Winebrenner, with no communication in return. Plaintiff also attempted to reach out to Senior Location Manager, Amy Huffman, with no communication in return, leaving him with no option but the instant litigation to be made whole and clear his good name.

26. Defendant has falsely and intentionally communicated and published to numerous individuals in the community and at his former place of employment that Defendant was terminated for inappropriate contact with a student, destroying his reputation in the community and causing him to be unemployable in his chosen career as a student bus driver that he passionate excelled at.

27. Recently, Plaintiff sought employment as a student driver with another school district and as would be expected in the application, the prospective employer needs information on whether he was ever terminated and if so for what cause. See Exhibit H. Application for Employment.

28. Defendant's actions and inactions have caused Plaintiff to suffer severe emotional distress, stress, insomnia, and mental anguish with clear, medical physical manifestations including being hospitalized.

29. Defendant's actions and inactions have caused Plaintiff to be economically devastated with no hope of prospective employment on the horizon given the false and defamatory allegations of Defendant.

## COUNT I - BREACH OF CONTRACT AND BREACH OF DUTY OF GOOD FAITH

30. Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference as though fully set forth herein.

31. As the facts state above, Defendant's offered a specific position to Plaintiff that he accepted. Employment was governed by a written "National Employee Handbook" with specific standards and provisions.

32. Plaintiff submitted a timely application for employment and was reasonably believed to have met or exceeded all the objective requirements to obtain this offered employment.

33. Defendant thus entered into a binding, contractual agreement for a term of employment under the set conditions outlined in the employee handbook. Such employment could only be terminated for violation of the employee handbook for actual cause, proof of violation and with adequate due process including notice and an opportunity to be heard.

34. The Defendant terminated Plaintiff's employment for an alleged violation of the employee handbook as detailed above, but his violation never occurred. Plaintiff was never given an opportunity to be heard, never given an opportunity to defend himself, never shown the purported video and generally given no procedural due process. This is a material breach of contract that has proximately caused substantial damages to Plaintiff.

35. Defendant is in material breach of their agreements and the Plaintiff is entitled to agreed-upon compensation, and reasonable damages for terminating a position he successfully applied for and excelled at in violation of public policy.

36. The presumption of at-will employment can be overcome by evidence of an agreement specifying that the employee will be discharged for just cause only. Rapagnani v.

10

Judas Co., 736 A.2d 666 (Pa. Super. Ct. 1999).

37. In this case, where Defendant invoked the employee handbook violation as the cause of termination, Plaintiff could only be discharged by Defendant proving that Plaintiff actually violated the policy, which Defendant has obviously not.

38. Further, if satisfaction of employment is to be determined by meeting certain tests, the employment may not be terminated until such tests have been made. Jacobs v. Kraft Cheese Co., 310 Pa. 75, 164 A. 774 (1933).

39. Defendant's actions as described above are also in material breach of, "the duty of good faith and fair dealing that is implied in express contracts in Pennsylvania". Livingstone v. North Belle Vernon Borough, 91 F.3d 515 (3d Cir. 1996). They breached this duty by their evasion of the spirit of the bargain, their lack of diligence and negligence as described above, and their willful rendering of imperfect performance. Somers v. Somers, 418 Pa. Super. 131 (1992).

40. As a direct and proximate result of Defendant's actions Plaintiff has suffered and continues to suffer serious injury, including but not limited to lost wages and benefits, expenses in seeking other employment, injury to his reputation, and emotional pain and suffering.

41. The failure and refusal by the Defendant to honor and comply with its agreement and with its promises to Plaintiff constitute knowing, willful and bad faith.

WHEREFORE Plaintiff respectfully requests this Honorable Court grant him judgment in excess of $500,000.00 for compensatory damages, consequential damages, future earnings, lost wages, bonus payments, interest, and costs.

## COUNT II – PROMISSORY ESTOPPEL

42.  Plaintiff incorporates all preceding paragraphs by reference as though fully set forth herein.

43.  The doctrine of promissory estoppel allows a party to enforce a promise even though that promise is not supported by consideration. Crouse v. Cyclops Industries, 560 Pa. 394, 402, 745 A.2d 606, 610 (2000).

44.  To establish promissory estoppel, the plaintiff must prove that: (a) the promisor made a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (b) the promisee actually took action or refrained from taking action in reliance on the promise; and (c) injustice can be avoided by enforcing the promise. Id. at 403, 745 A.2d at 610.

45.  Promissory estoppel is an outgrowth of equitable estoppel but, unlike equitable estoppel, promissory estoppel may serve as an independent cause of action. Paul v. Lankenau Hospital,375 Pa. Superior Ct. 1, 543 A.2d 1148 (1988). Pennsylvania has long recognized promissory estoppel as a vehicle by which a promise may be enforced in order to remedy an injustice. See Fried v. Fisher, 328 Pa. 497, 196 A. 39 (1938).

46.  Defendant made a promise that would reasonably be expected to induce action or forbearance on the part of the promise; Defendant offered employment, with objective qualifications under a handbook that if met would lead to continued employment, then are reasonably believed to have fraudulently terminated Plaintiff for a false and manufactured "violation" of the handbook.

47.  Plaintiff actually took action and refrained from taking action in reliance on the Defendant's false promises; in the present case, Plaintiff made many financial decisions based upon his believed secure employment.

48.  Plaintiff reasonably believes and therefore avers that his employment was intentionally terminated, via willful misconduct, actual malice, fraud, negligence, and an improper common plan, scheme, and conspiracy by Defendant, for improper, bad faith, and potentially discriminatory reasons.  Discovery will lead to further explicit knowledge of these actions.

49.  Injustice can only be avoided by awarding Plaintiff damages for actions taken by Defendant.

50.  As a direct and proximate result of the Defendant's misrepresentations and Plaintiff's reliance on them, Plaintiff has been injured and damaged by loss of employment, earnings, other employment benefits, expenses in seeking further employment, the incurrence of debt and other costs and losses and have suffered and continue to suffer severe emotional distress, mental suffering and pain, embarrassment and humiliation, anguish and anxiety.

51.  As a direct and proximate result of these misrepresentations, and their reliance on them, Plaintiff has sustained other injuries as may be discovered.  Plaintiff demands damages from the Defendant for all of said injuries.

52.  In light of the Defendant's knowing, willful, deliberate and bad faith misrepresentations and outrageous conduct done in contempt of Plaintiff's rights, the Plaintiff

13

believes and therefore avers that they are entitled to an award of punitive damages, and demands same from Defendant.

WHEREFORE Plaintiff respectfully request this Honorable Court grant him judgment in excess of $500,000.00 for compensatory damages, interest, and costs, attorney fees, and punitive damages.

## COUNT III - PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

53. Further, the Wage Payment and Collection Law, provides that any "active decision maker" will be personally liable for the wages due. Additionally, the president, secretary, treasurer, or similar officer may be found guilty of a summary offense and charged with a $300 fine, up to 90 days in jail, or both for violating the Wage Payment and Collection Law. Under Pennsylvania law, a corporation's top officers can be held personally liable for the non-payment of wages and benefits that the corporation owes its employees. *Belcufine v. Aloe, 112 F.3d 633 (3d Cir. Pa. 1997).*

54. In this case, Defendant's active decision makers and relevant officers should be held personally liable as well and subject to all legal and equitable remedies and punishments the law permits for failing to pay the promised bonus as detailed above.

55. In addition to the wages and compensation owed him, Plaintiff is entitled to an award of attorney's fees.

56. In accordance with 43 P.S. § 260.10, in addition to the amount owed Plaintiff and attorney fees, they are also entitled to liquidated damages in an amount equal to twenty-five

14

percent of the wages and compensation due.  Award of attorney fees to employee who has prevailed on claim for past due wages under Wage Payment and Collection Law (WPCL) is mandatory, given statute's purpose of protecting employees and the remedial relief it seeks to provide.  *Oberneder v. Link Computer Corp., 449 Pa. Super. 528, 674 A.2d 720 (1996)*.

WHEREFORE Plaintiff respectfully request this Honorable Court grant him judgment in excess of $500,000.00 for compensatory damages, interest, and costs, attorney fees, and punitive damages.

## COUNT IV. DEFAMATION AND DEFAMATION PER SE – LIBEL AND SLANDER

57. Plaintiff incorporates Paragraphs 1 through 56 by reference as though the same were more fully set forth therein.

58. Words, falsely spoken and imputing the commission of a crime involving moral turpitude for which the party might be punished; such words are held to be slanderous per se, rendering unnecessary proof of special damage to support a recovery.  Curran v. Philadelphia Newspapers, Inc., 497 Pa. 163, 439 A.2d 652 (1981).  Plaintiff need not establish special harm where a communication constitutes slander per se, and a statement imputing a criminal offense constitutes slander per se.  Fanelle v. LoJack Corp., 2000 U.S. Dist. LEXIS 17767, 29 Media L. Rep. (BNA) 1513 (E.D. Pa. Dec. 7, 2000).

59. The statements of Defendant, oral and written, which are identified in the paragraphs above were made by Defendant intentionally, willfully, and maliciously, and were made with knowledge of their falsity or with reckless disregard for their truth or falsity.

60. Defendant's statements are actionable per se and slanderous per se.  Defendant on a

15

daily basis accused the Plaintiff of crimes of moral turpitude, including but not limited to inappropriate touching of a minor child.

61. Plaintiff believes and therefore aver that Defendant has vocalized and publically spread and published false allegations of criminal and abusive conduct to numerous other persons, and numerous other false stories and allegations, both orally and on in writing. Discovery will shed light on the extent of the publication of these false allegations.

62. As a direct and proximate result of the false, misleading and malicious statements of Defendant to the relevant authorities and to others in the community, Plaintiff has suffered and continues to suffer serious and irreparable injury to his name and reputation.

63. As a direct and proximate result of the conduct of Defendant, Plaintiff has been and is greatly injured in his good name, credit and reputation, to his great financial loss and damage.

64. As a direct and proximate result of the conduct of Defendant, Plaintiff has suffered severe emotional distress, pain, anguish, humiliation and embarrassment and various potential physical injuries resulting from the severe emotional distress he has suffered including, but not limited to, nausea, headaches, sleeplessness, anxiety, severe emotional distress, mental and emotional trauma, etc.

65. Solely as a result of the aforesaid injuries, Plaintiff has been and in the future will be required to incur significant expenses in seeking and securing medical and psychological treatment in an effort to recover from the trauma caused by the outrageous, false statements of the Defendant, false allegations of criminal and abusive conduct to hundreds of people in the Defendant organization.

66. Solely as a result of the aforesaid injuries, Plaintiff has been and in the future may be

16

prevented from attending to his usual and customary activities, career occupations, and other necessary duties, to his severe financial detriment and loss.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, in an amount in excess of $500,000.00, together with punitive damages and costs, interest and attorneys' fees.

## COUNT V.  FALSE LIGHT - INVASION OF PRIVACY

67.  Plaintiff incorporates Paragraphs 1 through 66 by reference as though the same were more fully set forth therein.

68.  One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if the false light in which the other was placed would be highly offensive to a reasonable person, and the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Krajewski v. Gusoff, 2012 PA Super 166, 53 A.3d 793 (2012) (citing Restatement (Second) of Torts, § 652E). 48 P.L.E. TORTS § 125 (2017).

69.  Defendant's false statements and publications regarding Plaintiff inappropriately touching a minor as described above, repeated to the community, repeated to relevant individuals, and published daily were made by Defendant intentionally, willfully, and maliciously, and were made with their knowledge of their falsity or with reckless disregard for their truth or falsity.

70.  Serious offense may reasonably be expected to be taken by a reasonable person from

17

these statements.

71. As a direct and proximate result of the false, misleading and malicious statements of Defendant to the relevant authorities and to others in the community, Plaintiff has suffered and continues to suffer serious and irreparable injury to his good name and reputation.

72. As a direct and proximate result of the conduct of Defendant, Plaintiff has been and is greatly injured in his good name, credit and reputation, to his great financial loss and damage.

73. As a direct and proximate result of the conduct of Defendant, Plaintiff has suffered severe emotional distress, pain, anguish, humiliation and embarrassment and various potential physical injuries resulting from the severe emotional distress he has suffered including, but not limited to, nausea, headaches, sleeplessness, anxiety, severe emotional distress, mental and emotional trauma, etc.

74. Solely as a result of the aforesaid injuries, Plaintiff has been and in the future will be required to incur significant expenses in seeking and securing medical and psychological treatment in an effort to recover from the trauma caused by the outrageous, false statements of the Defendant.

75. Solely as a result of the aforesaid injuries, Plaintiff has been and in the future may be prevented from attending to his usual and customary activities, his career occupation, his pension in the education system and other duties, to his severe financial detriment and loss.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in his favor, in an amount in excess of $500,000.00, together with punitive damages and costs, interest and attorneys' fees.

## COUNT VI - NEGLIGENT, RECKLESS OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

76. Plaintiff incorporates Paragraphs 1 through 75 by reference as though the same were more fully set forth therein.

77. Defendant's extreme and outrageous statements and publications regarding Plaintiff as described above, repeated daily to the community, and published to the general public daily were and are made by Defendant intentionally, willfully, and maliciously, and are made with knowledge of their falsity or with reckless disregard for their truth or falsity.

78. As a direct and proximate result of Defendant's extreme and outrageous intentional and reckless statements described above, Plaintiff has experienced severe emotional distress and extreme mental pain, anguish, humiliation, stress, anxiety, upset and suffering with physical manifestations.

79. As a direct and proximate result of the extreme and outrageous conduct of Defendant, Plaintiff has suffered severe emotional distress, pain, anguish, humiliation and embarrassment and various potential physical injuries resulting from the severe emotional distress he has suffered including, but not limited to, nausea, headaches, sleeplessness, etc.

80. Solely as a result of the aforesaid injuries, Plaintiff has been and in the future will be required to incur significant expenses in seeking and securing medical and psychological treatment in an effort to recover from the trauma caused by the outrageous, false statements of the Defendant.

81. Solely as a result of the aforesaid injuries, Plaintiff has been and in the future may be prevented from attending to his usual and customary activities, occupations and duties, to his

19

financial detriment and loss.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in their favor, in an amount in excess of $500,000.00, together with punitive damages and costs, interest and attorneys' fees.


Respectfully Submitted,


1-22-2026

DATE

Christopher Papa, Esquire
Papa LLC
Counsel for Plaintiff
318 Highland Avenue
New Castle, PA 16101
412-443-3319

20

IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

WILLIAM KASTNER          :

          Plaintiff     :   NO. 10004-2026

vs.                 :

FIRST STUDENT INC.     :

          Defendants     :

## **VERIFICATION**

I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

1/16/2026
_____
Date

_____
MR. WILLIAM KASTNER, PLAINTIFF



Nicole Reep
260 High Acres Rd.
Harmony, PA  16037
724-290-6114

To Whom It May Concern,

I am writing this letter on behalf of Mr. Bill Kastner, who has served as the van driver for my children for the past seven years. As a parent of two sets of twins, I have had the unique opportunity to observe Mr. Bill's interactions with my children on a near-daily basis, and I feel compelled to speak on his character and conduct during this time.

Throughout the years, Mr. Bill has transported my children safely and reliably through all kinds of weather, including difficult conditions where many might have chosen not to drive. He remained consistent during the COVID-19 pandemic, taking extra precautions to ensure the safety and health of every child he transported. His patience and care never wavered, even when my children occasionally forgot items on the van or had emotional or behavioral moments that required understanding and calm.

Mr. Bill has always demonstrated a high level of professionalism and kindness. He has gone above and beyond his role as a driver by supporting my children's activities. He has attended nearly every school and private school event, including band concerts, chorus performances, and parades. His presence has always been one of encouragement and positivity — never anything else.

It is deeply concerning to hear that his actions are now being interpreted in a negative light. I can only speak from my personal

EX. A

COPY

experience as a parent, but in the seven years Mr. Bill has been a part of my children's daily routine, I have never witnessed or heard of any behavior that was inappropriate. His kindness, in my opinion, stems from a genuine care for the students he transports, not anything improper.

I ask that his long-standing service, dedication, and consistent professionalism be taken into account. From a parent's perspective, Mr. Bill has always put the safety and well-being of the children first.


Sincerely,

Nicole Reep



**Doris Ann Burd**
**954 Perry Highway**
**Harmony, PA  16037**
**724-290-3447**

To Whom It May Concern,

It is with great respect and genuine affection that I write this letter on behalf of Bill Kastner, a dedicated van driver I have known personally as he drove a van for my 4 grandchildren for 7 years.

I have had the privilege of knowing Bill for several years and have witnessed his kindness, patience and deep sense of care for the students he serves each day.  Bill is more than a van driver; he has a steady presence, a friendly face and often the first bit of warmth that greets you in the morning and afternoon.  No matter the weather or challenges of the day, Bill approaches in a way to calm and defuse situations that occur with the students with dignity and respect where it adds to a safe environment for students whether it's offering a kind word or any assistance that may be needed or just a smile.  Bill's genuine kindness and generosity remind me that there are still good people in this world that can often be rushed and rude.  He is the most patient, considerate, and humble van driver I have known.

I am a retired bus driver after 30 years of driving and anyone who knows Bill realizes his goodness and generosity and most of all caring for his students.

Sincerely,

Doris A. Burd

Ex B.



**pennsylvania**
DEPARTMENT OF HUMAN SERVICES

# PENNSYLVANIA CHILD ABUSE HISTORY CERTIFICATION

WILLIAM R. KASTNER
122 OAKWOOD AVE
NEW CASTLE, PA 16101

CERTIFICATION ID: FZGHEUMA08

CERTIFICATION PURPOSE: EMPLOYMENT

VERIFICATION DATE: 6/7/2025

SOCIAL SECURITY #: XXX-XX-0962

DATE OF BIRTH: ███████

The above named person has applied for a Pennsylvania Child Abuse History Certification pursuant to 23 Pa. C.S., Chapter 63 related to the Child Protective Services Law. NO RECORDS EXIST in the Pennsylvania Department of Human Services' Statewide database listing WILLIAM R. KASTNER as a perpetrator of an Indicated or Founded report of child abuse.

Applicants are required to show the Administrator the results of their Child Abuse History Certification. Administrators are required to keep a copy of this Child Abuse History Certification on file. Any person altering the contents of this document may be subject to civil, criminal or administrative action.

*ISSUED BY*    Commonwealth of Pennsylvania
Department of Human Services
CHILDLINE AND ABUSE REGISTRY
ChildLine Verification Unit
P.O. Box 8170
Harrisburg, PA 17105-8170
1-877-371-5422

ANY ALTERATION OR ERASURE VOIDS THIS DOCUMENT



046390



CY8930 - 6/00

# Certificate of Completion

## Recognizing and Reporting Child Abuse: Mandated and Permissive Reporting in Pennsylvania

Meets ACT 31 of 2014 training requirements

Meets the Recognizing Child Abuse and Mandated Reporting components of ACT 126 of 2013 training requirements

3 continuing education hours

### Presenter:

University of Pittsburgh School of Social Work,
PA Child Welfare Resource Center

403 East Winding Hill Road, Mechanicsburg, PA 17055

### Presented to:

Kastner, William

on the date:

06/08/2025

*Michele Gordon*
Michele Gordon, PhD, LSW,
Director, Career Services and Continuing Education
School of Social Work



*Michael Byers*
Michael Byers,
Director PA Child Welfare
Resource Center

Provider Number:
CACE000004

CE Course Number:
PCW000001

 Gmail

## Bill Kastner

**Sarah Shipley** <sarah.shipleycfa@gmail.com>                                    Sun, Oct 12, 2025 at 9:56 AM
To: wrkastner@gmail.com

### To Whom It May Concern,

I am writing to express my deep concern and disappointment regarding the recent decision to terminate Mr. Bill Kastner, a long-time van driver for Seneca Valley. I have had the privilege of knowing him for several years, and I can say without hesitation that he is one of the most dedicated, caring, and genuinely compassionate individuals I have ever met.

This man's commitment to the students he transports goes far beyond the responsibilities outlined in his job description. He treats every child as if they were his own grandchild — with warmth, respect, and genuine care. Over the years, he has celebrated their birthdays with small gifts, provided Christmas presents, and even purchased shoes or backpacks for students whose families were struggling financially. He attends their sporting events and school plays, not out of obligation, but out of heartfelt pride in "his kids."

As a parent, I can personally attest to the positive impact he has had on my family. He has shown kindness and concern that extends well beyond the school van — checking in on my son when he was ill, asking about his recovery after surgery, and always offering words of encouragement to both of us. As a single mother, his support and thoughtfulness have meant more than I can express.

To see such a compassionate and selfless man lose his job over a simple hug — an act that came from a place of pure kindness — is truly disheartening. There was no ill intent, no boundary crossed, only a gesture that reflected the same care and connection he has consistently shown throughout his years of service.

This man's heart is in his work. He represents the kind of person we should want driving and guiding our children — someone who not only ensures their safety, but makes them feel valued, seen, and supported every single day. His actions have made a difference in the lives of countless students and families, and firing him for such a human, harmless act sends the wrong message to both the community and the children who look up to him.

I respectfully urge you to reconsider this decision. The character, compassion, and integrity this man has shown over the years should not be overshadowed by one moment of kindness that has been misunderstood. Seneca Valley — and more importantly, the students — are better because of him.

With sincere respect and gratitude,

 Ex D.















2425 Evans city Road
Harmony PA 16037

CERTIFIED MAIL

7022 2410 0002 0098 5075

Bill Kastner
122 Oakwood Ave
New castle, PA 16101

16101~122322

Retail

RDC 99

16101

U.S. POSTAGE PAID
FCM LETTER
EVANS CITY, PA 16C
OCT 03, 2025

$6.08

R2303S100916-1

EX. E



(COPY)

2425 Evans City Rd.
Harmony, PA 16037
(724) 248-1530

October 1, 2025

USPS Certified and Regular Delivery

Bill Kastner
122 Oakwood Ave.
New Castle, PA 16101

RE: Termination of Employment

Dear Bill,

First Student considers our primary obligation to provide safe and reliable transportation to the students and communities we serve. It is of utmost importance for our employees to be dependable professionals, honoring the trust placed in our company.

On September 11, 2025, you put your arm around a student and allowed them to sit up in front of the van. There were other instances from you of unwarranted touching of students or passengers that was witnessed on the videos from the vehicle. The employee handbook, A. Employee Misconduct (page 38) lists, "inappropriate or unwarranted touching of a passenger or employee" as unacceptable behavior that may subject an employee to immediate termination of employment. The school district does not permit you to be assigned to any routes served by the district.

As of October 1, 2025, your employment at First Student is terminated due to employee misconduct.

Under federal law, you have the right to continue your health insurance coverage through the Consolidated Omnibus Budget Reconciliation Act (COBRA). This allows you to extend your health benefits for a limited time after your employment ends. If applicable, you will receive detailed information about COBRA coverage. All benefits related questions should be directed to the First Student Benefits Center at 1-833-277-8056 or www.myFIRSTstop.net.

We wish you all the best in your future endeavors.

Sincerely,

Steven Hovis
Location Manager

- Physical or verbal abuse, and/or inappropriate or unwarranted touching of a passenger or employee
- Conviction of a felony or other criminal offense, if job related and consistent with business necessity
- Use of a cellular phone, eating, drinking, vaping, or smoking, while the Company vehicle is in operation. Your personal or work-issued cellular phone must be turned off and stowed while operating a Company vehicle or while operating a personal vehicle on Company business
- Other serious misconduct and or violation of First Student policies and/or rules
- Violations consistent with the location attendance policy, unless otherwise protected by applicable law
- Negligent damage to equipment
- Failure to observe sanitation or disciplinary policies, and/or laws and regulations of the state, school district, or Company
- For individuals operating company vehicles, failure to report a moving traffic violation, citation, and/or conviction in any vehicle, including personal, in any state, within seven (7) days to the Company
- Deviation from assigned routes unless approved by management and/or the district
- Failure to report a collision, personal injury, or safety-related passenger incident in accordance with Company policy
- Failure to complete required reports in the time and manner required by Company policy
- Insubordination and/or poor work habits (e.g. loafing, wasting time, loitering, excessive visiting, sleeping on the job, disorderly conduct, or improper use of two-way radios, etc.)
- Unauthorized use of Company vehicles
- Other misconduct and/or violations of any First Student policies and rules, whether documented in this Handbook or not

None of the foregoing prohibitions are intended to infringe on any rights granted to statutory employees by the National Labor Relations Act.

## B. Prevention of Workplace Violence

At First Student, a safe work environment is fundamental to the success of our employees and our Company. Each First Student employee has the right to expect that their workplace is free from intimidating, threatening, or dangerous behaviors and practices while working for the Company. Threats or acts of violence, including but not limited to, intimidation, bullying, physical or mental abuse, and/or coercion; that involve or affect Company employees or that occur on Company Property will not be tolerated. The offenses and unacceptable behaviors listed below will not be tolerated against fellow employees, customers, vendors, contractors, as well as the general public, and may result in disciplinary action up to and including termination of employment on the first offense:

- Any act or veiled threat of physical, verbal, or emotional abuse, force, violence, or intimidation, including but not limited to hitting, shoving, or other such aggressive conduct directed toward another or used to control or intimidate another individual or their family, friends, associates, or property
- Any pattern of coercive behavior which involves any act or threat of abuse, force, violence,


Ex. F

All    Images    Short videos    Forums    Videos    Sho

EX. G



**Cold urticaria** is a rare condition that causes an allergic reaction to cold temperatures. It usually triggers a rash or hives after exposure to cold air, water, food or drink. But symptoms can be more severe. The condition is sometimes associated with an underlying blood cancer or infectious disease. Jan 18, 2023

https://my.clevelandclinic.org

Cold Urticaria: What It Is, Symptoms, Causes & Treatment

THIS IS THE CONDITION
MY 6TH GRADER
THAT SAT UP FRONT





# Mohawk
## AREA SCHOOL DISTRICT
*Educating our future*

## APPLICATION FOR EMPLOYMENT

Mohawk area School District is an equal opportunity employer. Mohawk does not discriminate in employment with regard to race, color, religion, national origin, citizenship status, ancestry, age, sex (including sexual harassment), sexual orientation, marital status, physical or mental disability, military status or unfavorable discharge from military service or any other characteristic protected by law.

### PERSONAL INFORMATION

*Incomplete information could disqualify you from further consideration. Please complete all fields.*

Name _____     Date_____

Address _____

E-mail Address _____

Mobile Phone # _____ Permission to announce B-day to Staff ___ Yes ___ No

Emergency Contact: Name_____ Phone:_____ Relationship_____

Are you eligible to work in the U.S? ___Yes ___No

Are you at least 18 years or older? (If no, you may be required to provide authorization to work.) ___Yes ___No

Have you ever been terminated from employment or asked to resign by an employer?

___Yes ___No

If yes, please provide company names and details _____

Can you work any shift? ___Yes ___No If no, explain: _____

Can you work overtime, including weekends? ___Yes ___No

Are you able to perform the essential functions of the job for which you are applying, with or without a reasonable accommodation? ___Yes ___No

Are you retired from public education currently receiving PSERS retirement? ____Yes ____No











IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

WILLIAM KASTNER,

    Plaintiff

vs.

FIRST STUDENT INC,

    Defendants

*10064 - 2026*

## AFFIDAVIT OF SERVICE BY STAFF

(  X  )    Service by Certified Mail # 70223330000103979371
Return Receipt Requested and Regular First Class Mail, to:

First Student Inc.
191 Rosa Parks Street
8th Floor
Cincinnati, OH 45202

I, the undersigned addressed the envelope containing a Complaint for William Kastner, placed the required postage upon said envelope, and then mailed the envelope and contents by U.S. Certified Mail, Return Receipt Requested and Regular First Class Mail on the 22nd day of January, 2026. See Exhibit A.

On the 30th day of January, 2026, the Certified Envelope was signed and picked up by Defendant. (See Exhibit A). The regular mail was not returned.

I verify that the statements made in this Certificate of Service are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. Section 4904, relating to unsworn falsification to authorities.

FILED/ORIGINAL

2026 FEB 12 PH 2: 48

JODI KLABON-ESOLDO
PRO AND CLERK

IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

WILLIAM KASTNER           :

      Plaintiff        :     *10064-2026*

                            :

vs.                     :

                            :

FIRST STUDENT INC       :

                            :

      Defendant      :

                            :

# EXHIBIT A