**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WILLIAM R. KASTNER,                )
                                   )
Plaintiff,                         )
                                   )
        v.                         )        Civil Action No. 26-309
                                   )        Judge Nora Barry Fischer
FIRST STUDENT, INC.,               )
                                   )
Defendant.                         )

**<u>MEMORANDUM OPINION</u>**

I.      INTRODUCTION

Presently before the Court is Plaintiff William R. Kastner's Motion to Reinstate the Complaint pursuant to Fed. R. Civ. P. 60(b), or in the alternative, Fed. R. Civ. P. 59(e), and Defendant First Student, Inc.'s opposition thereto. (Docket Nos. 20, 27). Following receipt of these initial briefs, the Court held an oral argument on May 26, 2026, the official transcript of which was filed on June 11, 2026. (Docket Nos. 28, 33). After careful consideration of the parties' arguments, and for the following reasons, Plaintiff's motion is granted.

II.     BACKGROUND

On January 22, 2026, Plaintiff initiated this action in the Court of Common Pleas of Lawrence County. (Docket No. 1-2). On February 20, 2026, Defendant removed the action to this Court based on diversity jurisdiction and subsequently filed a partial motion to dismiss and answer. (Docket Nos. 1, 4). Plaintiff's state court counsel, Christopher Papa, Esq., is not admitted to practice in the Western District of Pennsylvania, nor a registered filer on the Court's electronic filing system ("ECF"). As such, defense counsel sent him copies of each document they filed via email and first-class mail. (Docket No. 12 ¶ 4). The Court's staff also emailed Christopher Papa copies of its standard orders that were entered after Defendant's removal and directed him to

register for an ECF account in accordance with this District's e-filing requirements. (Docket No. 33 at 3).

The Court denied the partial motion to dismiss without prejudice on March 2, 2026 for failing to attach a certification stating that Defendant had met and conferred with Plaintiff prior to filing the motion, as is required under this Court's Practices and Procedures and its Rule 12(b) Order. (Docket No. 10). As such, the parties were directed to meet and confer pursuant to the 12(b) Order and file a status report. (*Id.*). The Court's staff also emailed a copy of the Order denying the partial motion to dismiss to Christopher Papa the same day. (Docket No. 33 at 3).

The following day, the Clerk of Court sent Christopher Papa a letter reminding him that he had not been admitted to practice before this Court and directing him to immediately take one of the following actions: (1) file a motion to appear pro hac vice in accordance with Local Rule 83.2.B, (2) advise the Court that he had obtained counsel who has been admitted to practice and file a motion to withdraw his appearance, or (3) make arrangements with the Clerk's Office to receive a general admission in accordance with Local Rule 83.2.A. (Docket No. 11).

Two weeks later, Defendant filed a timely status report advising that defense counsel had made multiple attempts to contact Christopher Papa via phone and email in order to schedule a meeting in accordance with the Court's March 2, 2026 Order. (Docket No. 12). However, most of their communications went unanswered, and even when they managed to schedule a meeting through Christopher Papa's legal assistant, he cancelled twenty minutes beforehand and failed to reschedule with defense counsel before the parties' status report was due. (*Id.*).

Given same, the Court scheduled an in-person status conference with lead trial counsel for March 27, 2026 and ordered the parties to meet and confer and file a second joint status report by March 25, 2026. (Docket No. 14). The Court's staff mailed a copy of this Order to Christopher

2

Papa's office and emailed him pointing out the second status report deadline, the upcoming in-person status conference, and that he had not been admitted to practice before this Court and needed to take corrective action in accordance with Local Rule 83.2. (Docket No. 33 at 4–5). The email further requested that he confirm receipt of this message. (*Id.* at 5). In addition, the Court's staff called Christopher Papa's office multiple times and left several voicemails in advance of the March 27, 2026 status conference, but he did not respond to any of these communications. (*Id.*).

Defendant subsequently filed a timely status report advising that defense counsel scheduled a conference call with Christopher Papa on two separate dates and in each instance he inexplicably failed to join the call as scheduled. (Docket No. 15). Two days later, the Court held the in-person status conference in accordance with its prior Order. (Docket No. 16). Both defense attorneys, Shannon Huygens, Esq. and Caroline Orrico, Esq., appeared for Defendant, but Christopher Papa failed to appear for Plaintiff. (*Id.*). The Court waited fifteen minutes for his arrival and personally left voicemails for him at his office phone number, which were never returned. (*Id.*). The Court placed the background of the matter on the record, including the efforts of the Clerk's Office, the Court's staff, and defense counsel to contact Christopher Papa. (*Id.*).

The Court proceeded to enter an order the same day staying the case and directing Mr. Kastner to take one of the following actions by April 17, 2026: (1) have counsel admitted to practice in this District enter an appearance on his behalf or move for admission to appear pro hac vice and/or for general admission; or, (2) enter an appearance to represent himself pro se. (Docket No. 17). The Order concluded that failure to adhere to these directives may result in sanctions, including dismissal for failure to prosecute. (*Id.*). The Court's staff sent copies of the March 27, 2026 hearing memorandum and Order to Christopher Papa and Mr. Kastner via email and first-

class mail, and they also mailed copies of the entire court record to Mr. Kastner.  (Docket No. 33 at 6).

Mr. Kastner did not have an appearance entered on his behalf by April 17, 2026 in accordance with the Court's March 27 Order.  Therefore, the Court entered a Memorandum Order on April 29, 2026 dismissing the Complaint without prejudice for failure to timely prosecute; and directing Mr. Kastner to file a motion to reinstate his Complaint and demonstrate good cause for his failure to prosecute by May 13, 2026.  (Docket No. 18).  Once again, it cautioned that failure to timely comply with the Court's directives can result in dismissal with prejudice.  (*Id.*).

On May 12, 2026, Angelo A. Papa, Esq., the father of Christopher Papa, entered an appearance on Plaintiff's behalf.  (Docket No. 19).  Although Angelo and Christopher Papa are related and their practices share a large office building, they contend that they maintain separate solo practices.  (Docket No. 26).  Unlike his son, Angelo Papa is admitted to practice before this Court.  (Docket No. 19).  In fact, Angelo Papa has previously appeared and tried a non-jury trial before this Court.  *See McDermott v. McDermott*, No. 2:11-cv-01369-NBF.  After entering his appearance, Plaintiff filed a timely Motion to Reinstate the Complaint under Federal Rule of Civil Procedure 60(b), or in the alternative Rule 59(e).  (Docket No. 20).

Defendant sought sanctions against Christopher Papa pursuant to Rule 16(f) that same day for the attorneys' fees and costs Defendant incurred as a result of his failure to comply with the Court's directives, including, but not limited to, his failure to appear at the status conference on March 27, 2026.  (Docket Nos. 21, 22).  Each party timely filed a brief in opposition to the other's motion, and the Court scheduled a joint in-person hearing on both matters.  (Docket Nos. 25, 26, 27).  Plaintiff, as well as both of his attorneys, appeared at the hearing on May 26, 2026, during which Angelo Papa admitted that Christopher Papa's conduct justified sanctions and did not

challenge Defendant's request for attorneys' fees. (Docket No. 28). As such, the Court subsequently granted Defendant's Motion for Sanctions and ordered Christopher Papa's law firm, Papa LLC, to pay Defendant $6,519.50 for the reasonable expenses it incurred as a result of his noncompliance pursuant to Rule 16(f). (Docket No. 34). Having resolved the request for sanctions, the Court now turns to the question of reinstatement.

III.    LEGAL STANDARDS

"A party seeking reinstatement of an action 'bears the burden of proof to establish good cause why the matter should be reinstated.'" *Brown v. Wayne Cnty. Pennsylvania*, No. CV 3:18-155, 2021 WL 6063219, at *1 (M.D. Pa. Dec. 22, 2021) (quoting *Scott v. Trumark Fin. Credit Union*, No. CV 17-2020, 2018 WL 1251771, at *2 (E.D. Pa. Mar. 12, 2018)). "'Good cause' is understood to mean '[a] legally sufficient reason,' and it reflects 'the burden placed on a litigant . . . to show why a request should be granted or an action excused.'" *Joseph v. Hess Oil Virgin Islands Corp.*, 651 F.3d 348, 351 (3d Cir. 2011) (quoting Black's Law Dictionary 251 (9th ed. 2009).

Federal Rule of Civil Procedure 60(b) provides that a party may seek relief from a final judgment, order, or proceeding based on any of the six factors enumerated therein. Fed. R. Civ. P. 60(b). The first factor permits a final order or judgment to be set aside where there has been "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). When evaluating whether a party's neglect in prosecuting its case was "excusable," courts should consider: (1) "the danger of prejudice" to the non-movant; (2) "the length of the delay and its potential impact on judicial proceedings;" (3) "the reason for the delay, including whether it was within the reasonable control of the movant;" (4) and "whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498, 123 L. Ed. 2d 74

(1993). The sixth factor under Rule 60(b) is "a catch-all provision that authorizes a court to grant relief from a final judgment for 'any . . . reason' other than those listed elsewhere in the Rule." *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014). "[A] party seeking Rule 60(b)(6) relief must demonstrate the existence of 'extraordinary circumstances' that justify reopening the judgment." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008).

Rule 59(e) of the Federal Rules of Civil Procedure states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). It is well established that "[m]otions for reconsideration exist to 'correct manifest errors of law or fact or to present newly discovered evidence.'" *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 230 (3d Cir. 2020) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

> A judgment may be altered under Rule 59(e) if the party seeking reconsideration shows at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion …; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (citation and internal quotation marks omitted).

*In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017), *as amended* (Jan. 25, 2017). Motions for reconsideration are not a tool to re-litigate and reargue issues which have already been considered and disposed of by the Court, *see Moslem v. Warden, F.C.I. Fort Dix*, No. 23-2819, 2024 WL 658976, at *2 (3d Cir. Feb. 16, 2024) (citing *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011)), to express disagreement with the Court's rulings, *see In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018), or for addressing arguments that a party should have raised earlier, *see Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 191 (3d Cir. 2021). At least at the District Court level, motions for reconsideration should be sparingly granted. *See*

*Cole's Wexford Hotel, Inc. v. UPMC and Highmark, Inc.*, 2017 WL 432947, at *2 (W.D. Pa. Feb. 2, 2017).

IV.    DISCUSSION

Plaintiff's motion for reinstatement does not explicitly state which of the six Rule 60(b) factors he seeks relief under, but it appears to address the four considerations for "excusable neglect." (Docket No. 20). His only indication as to the bases for relief under Rule 59(e) is a conclusory mention of "manifest injustice" without further elaboration. *See id.* at 2 ("It would be a manifest injustice to dismiss Plaintiff's valid claim in Federal Court due [to] these procedural issues, when Plaintiff is now ready to proceed in Federal Court.").

Instead, he explains that his state court counsel did not submit to the preliminary proceedings before this Court in an effort to avoid creating an argument that Plaintiff consented to federal jurisdiction. (*Id.*). In hindsight, he acknowledges that he "should have participated" in those proceedings via other counsel while Christopher Papa sought admission to practice in this District and he "sincerely apologizes" for the "procedural confusion" in this matter. (*Id.*).

At the oral argument, Christopher Papa admitted that he is the only person or party at fault for Plaintiff's failure to prosecute and that sanctions were appropriate. *See* Docket No. 33 at 26 ("Having heard what I heard so far, it doesn't appear that Mr. Kastner is the person who may have caused the missed deadlines or delays, and I think counsel have rightly indicated that if there is an issue about how this case has proceeded, it rests with counsel and not the client. Correct? MR. ANGELO PAPA: Emphatically correct, Your Honor. MR. CHRISTOPHER PAPA: It rests with me, Your Honor. Me. So I take full responsibility for that."). Angelo Papa further elaborated that the office(s) are experiencing "exponential" growth, issues with their "communication system," and several unspecified "personal issues." (*Id.* at 9, 16). Nevertheless, he admitted that the "good

cause is not as good as [he] would like it to be," but "[they] have [implemented] a very aggressive elaborate system" to prevent these problems from reoccurring.  (*Id.* at 16).

In response, Defendant counters that Christopher Papa's conduct does not constitute "excusable neglect," but rather "a conscious and continued disregard of this Court's authority." (Docket No. 27 at 3).  It further asserts that Plaintiff's retention of new counsel "does not cure" his failure to prosecute, nor "erase the history of noncompliance that led to dismissal."  (*Id.* at 2). Finally, it argues that "reopening this case would impose additional and unwarranted prejudice on Defendant, which has already expended significant time and resources responding to Plaintiff's failure to participate in the litigation." (*Id.* at 5).

To the extent Plaintiff contends that Christopher Papa's "procedural confusion" would constitute "excusable neglect," it is well established that "an attorney's inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect for purposes of Rule 60(b)(1)." *Brown v. Agway Energy Servs., LLC*, No. CV 18-321, 2018 WL 10228392, at *4 (W.D. Pa. Nov. 14, 2018).  Similarly, the rapid growth of his practice and the unspecified "communication system issues" at his office do not excuse his repeated failure to comply with the Court's orders or communicate with opposing counsel and the Court's staff.  *See Jour v. Flix Bus SE D/b/a Greyhound Bus Co.*, No. 2:25-CV-02601 (BRM) (SDA), 2026 WL 1031143, at *3 (D.N.J. Apr. 16, 2026) (explaining that attorneys "have an ongoing responsibility to keep up with the filings on behalf of their clients, either through the ECF system or by contacting the Clerk's Office directly."); *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 330 (3d Cir. 2012) ("It is well established that a busy caseload generally does not constitute a basis for a finding of excusable neglect.").  Rather, "excusable neglect" describes situations "where the court, after weighing the relevant considerations is satisfied that counsel has exhibited substantial diligence, professional

8

competence and has acted in good faith to conform his or her conduct in accordance with the rule, but as the result of some minor neglect, compliance was not achieved." *Kanoff v. Better Life Renting Corp.*, 350 F. App'x 655, 657 (3d Cir. 2009). In this Court's estimation, Christopher Papa's conduct falls well short of this standard.

That said, the Court dismissed the Complaint without prejudice and conditioned the dismissal upon Plaintiff demonstrating good cause for his failure to prosecute. (Docket No. 18). In other words, the dismissal was not "final" because it was not "the 'conclusive' and 'last' filing on the docket," which "complete[d]" and "terminate[d]" this action. *Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 312, 145 S. Ct. 690, 696, 221 L. Ed. 2d 143 (2025) (quoting Black's Law Dictionary 779, 1298 (3d ed. 1933). Rather, the dismissal "was conditional—that is, that the Court retained jurisdiction to reinstate the action upon a showing of good cause" if Plaintiff filed a motion to reinstate "within the specified time-period." *Soltis v. CVS Pharmacy, Inc.*, No. 3:18-CV-01780, 2025 WL 2101846, at *5 (M.D. Pa. July 25, 2025). Because Plaintiff timely sought reinstatement, the Court's April 29, 2026 Memorandum Order did not become final.[1] *See Grant v. Revera Inc./Revera Health Sys.*, 655 F. App'x 914, 919 (3d Cir. 2016) ("[I]t follows that a dismissal of a counterclaim with leave to reinstate will be treated as a final order if the defendant has elected not to seek reinstatement."); *see also Berke v. Bloch*, 242 F.3d 131, 135 (3d Cir. 2001) (holding that a non-final dismissal becomes final when it provides clear instructions that the order will ripen into a final order on a defined date if a plaintiff takes no action in response).

The distinction between a final and non-final dismissal is important because once a case is terminated, the "court's power under Rule 60(b) kicks in, permitting the court to look back at the

---

[1]    "This Court has the inherent authority to interpret its own orders." *Myers v. AutoZoners, LLC*, No. CV 18-760, 2019 WL 480467, at *1 (W.D. Pa. Feb. 7, 2019); *see also In re Asbestos Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 243 (3d Cir. 2013) ("We review a district court's interpretation of its own orders with deference.").

'final' act in a case and provide relief from that act when appropriate." *Waetzig*, 604 U.S. at 313, 145 S. Ct. at 697. Thus, the question is whether Plaintiff has satisfied the April 29, 2026 Memorandum Order, i.e., demonstrated good cause for failing to prosecute this matter, and "[i]f he has complied with this condition of dismissal, the complaint is to be reinstated." *Brennan v. Kulick*, 407 F.3d 603, 608 (3d Cir. 2005). *See Soltis*, 2025 WL 2101846, at *5 (differentiating between "the more lenient 'good cause' standard" and the "more strict 'extraordinary circumstances'" standard under Rule 60(b)(6)).

Although the finality concerns of Rule 60(b) are not present here, the caselaw governing relief under subsection (b)(6) for an attorney's misconduct is helpful to inform our analysis. In *Boughner v. Sec'y of Health, Ed. & Welfare*, 572 F.2d 976 (3d Cir. 1978), the Third Circuit held that relief under Rule 60(b)(6) was appropriate where the plaintiff had suffered a default judgment because his attorney had displayed "neglect so gross that it is inexcusable." *Id.* at 978. The Court found that the reasons advanced for the attorney's failure to file responsive pleadings—i.e., his ongoing judicial campaign, the loss of his secretary, and his case backload—were "unacceptable" and his "egregious conduct amounted to nothing short of leaving his clients unrepresented." *Id.* at 977–78. The Court reasoned that "[t]o permit these judgments to stand, in light of [their attorney's] conduct and the absence of neglect by the parties, would be unjust." *Id.* at 979.

In general, a client who has voluntarily chosen an attorney to represent him cannot later "avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R. Co.*, 370 U.S. 626, 633, 82 S. Ct. 1386, 1390, 8 L. Ed. 2d 734 (1962). But, in *Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805 (3d Cir. 1986), the Third Circuit noted that *Boughner* stands for the principle that, in some situations, clients are not bound by their attorney's actions for the purposes of Rule 60(b). *Id.* at 807. Instead, the Court recognized its increasing emphasis on

10

"visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault." *Id.* Consequently, the Court explained that "we do not favor dismissal of a case when the attorney's delinquencies—not the client's—necessitate sanctions." *Id.* at 808.

The Court's Memorandum Order considered the *Poulis* factors in light of the complete lack of communication from Plaintiff or his counsel and concluded that dismissal of the Complaint for lack of prosecution was appropriate. (Docket No. 18). The Court determined that five of the six *Poulis* factors favored dismissal, but it gave Plaintiff a final opportunity to renew his complaint upon a showing of good cause for failing to prosecute this action. (*Id.* at 6). In sum, the Court held that "this case cannot proceed without participation from Plaintiff and his counsel" and "he has made no effort to pursue his claims against Defendant since the case was removed to this Court from Lawrence County, despite numerous attempts by defense counsel, the Court and staff to secure his participation." (*Id.* at 5). But, by allowing Plaintiff to "seek new counsel" and conditioning the dismissal upon a showing of good cause, "the Court accounted for the interests of justice at issue when [his] opportunity to litigate is at stake due to no fault of his own, but of his attorney's." *Shaw v. Vetforce, Inc. Pennsylvania*, No. 4:23-CV-01868, 2025 WL 83511, at *5 (M.D. Pa. Jan. 13, 2025).

The current landscape of this matter has shifted significantly since then. Albeit belated, new counsel admitted to practice in this District has entered an appearance on Plaintiff's behalf in accordance with the Court's March 27, 2026 Order. (Docket No. 19). Plaintiff has sought to pursue his claims by filing the present motion to reinstate, which averred that he is "now ready to proceed" before this Court. (Docket No. 20). And he subsequently appeared before this Court and presented testimony regarding his attorney's delays, noncompliance, and failure to prosecute. (Docket No. 28). While the foregoing does not excuse his long-delayed participation in the matter

that *he* initiated, it has provided some insight into the causes of his delinquencies and unresponsiveness.

That said, both Angelo and Christopher Papa acknowledged that Christopher Papa is at fault for the delays and noncompliance in this proceeding. *See, e.g.*, Docket No. 33 at 17 ("I take full responsibility for what the Court has laid out as far as the litany of miscommunications."); *id.* at 19 ("[T]his is not the fault of Attorney Angelo Papa or anyone else here."); *id.* at 26 (agreeing with the Court's assessment that Mr. Kastner is not at fault for the missed deadlines or delays). On the other hand, the record indicates that Mr. Kastner acted reasonably in this instance as he hand-delivered the copies of the filings he received from the Court to Christopher Papa's office on two separate occasions. (*Id.* at 27). Angelo Papa testified that upon learning of the Court's correspondence to Mr. Kastner, they "rallied around and got together" and "involved the whole team in [their] office." (*Id.* at 11). In other words, with respect to Mr. Kastner, "the absence of his personal responsibility for his attorney's behavior seems clear." *Carter*, 804 F.2d at 807.

Further, the Court has had the opportunity to reconsider the effectiveness of alternative sanctions. *See McCune v. Dep't of Corr.*, 2025 WL 1939883, at *3 (W.D. Pa. June 11, 2025) ("Dismissal is a sanction of last resort, and it is incumbent upon a court to explore the effectiveness of lesser sanctions before ordering dismissal."). To that end, the Court imposed monetary sanctions on Christopher Papa in the amount of $6,519.50 for the reasonable expenses Defendant incurred as a result of his noncompliance. (Docket No. 34). As such, the Court's previous finding that "there are no effective alternative sanctions" because Plaintiff was not represented by counsel before this Court and had not entered an appearance to represent himself pro se, is no longer applicable. (Docket No. 18 at 4). The imposition of monetary sanctions on Christopher Papa recognized that Defendant "has suffered some financial detriment in the expenditure of fees

because of the negligence of plaintiff's counsel," but Plaintiff "should not shoulder the burden of this incompetence alone." *Carter*, 804 F.2d at 808.

The Court is certainly sympathetic to Defendant's frustration in the significant delay in this matter and its expenditure of "unnecessary time and resources" due to the conduct of Plaintiff's state court counsel. (Docket No. 27 at 4). However, even Defendant acknowledges that "this case involves far more than minor procedural missteps" and the reasons for Christopher Papa's inaction "underscores his failure to take even the most basic steps required of an attorney." (*Id.* at 3–4). That is to say, to permit the dismissal of the Complaint to stand, in light of Christopher Papa's conduct and "the absence of neglect" by Plaintiff, "would be unjust." *Boughner*, 572 F.2d at 979.

This litigation has progressed in an orderly fashion since the entry of Angelo Papa's appearance on behalf of Plaintiff. *See id.* at 978 ("[W]e are not unmindful of the need for judicial eagerness to expedite cases, to fully utilize the court's time, to reduce overcrowded calendars and to establish finality of judgments."). Considering that "[c]ourts should be reluctant to deprive a plaintiff of the right to have his claim adjudicated on the merits," the Court finds that "measures short of dismissal would better serve the interests of justice." *Lee v. Krieg*, 227 F. App'x 146, 148 (3d Cir. 2007). To that end, although monetary sanctions have already been imposed upon Plaintiff's state court counsel and Mr. Kastner has consented to Angelo Papa's representation going forward, the Court notes that Plaintiff's current counsel indicated that Christopher Papa will assist in this action at the hearing on May 26, 2026. *See* Docket No. 33 at 10–11 ("MR. ANGELO PAPA: And my son Christopher will help on that file and that's okay, too? WILLIAM KASTNER: Yes, it is."). However, Christopher Papa has yet to file a motion to appear pro hac vice or receive general admission to practice in this District, despite being instructed to do so multiple times and

repeatedly advising the Court that he has taken the necessary steps to obtain admission within this District. (Docket Nos. 11, 20, 33 at 18).

This Court cannot uphold its obligation to "maintain the integrity of proceedings and the confidence of the public" without "a means of restricting admission to practice to individuals who are familiar with and are committed to the ethical and procedural standards required of officers of the Court." *Gsell v. Rubin & Yates, LLC*, 41 F. Supp. 3d 443, 446 (E.D. Pa. 2014). Given Christopher Papa's continued failure to seek general or pro hac vice admission, he is not authorized to act as counsel in this action and the Court expects Angelo Papa and his firm will continue to handle this matter. *See In re Mitchell*, 901 F.2d 1179, 1188 (3d Cir. 1990) ("An attorney who files an appearance in this court accepts the responsibility to see to it that the litigation is conducted in accordance with the rules and orders of this court."). The Court believes that Angelo Papa's continued representation will be "effective toward mitigating the prejudice caused by dilatory behavior or delinquency," *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 136 (3d Cir. 2019), and consistent with the parties' and Court's shared duty to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

In sum, Christopher Papa, not Plaintiff, is responsible for the delinquencies in bringing this action and the "most extreme sanction of a dismissal with prejudice" is not warranted, *Lee*, 227 F. App'x at 148, the Court being satisfied that Plaintiff has demonstrated good cause for his failure to prosecute this matter.

V.    CONCLUSION

Based on the foregoing, Plaintiff's Motion to Reinstate the Complaint [20] is granted. An appropriate Order follows.

14

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: June 30, 2026

cc/ecf: All counsel of record.

Christopher Papa, Esq.
318 Highland Ave.
New Castle, PA 16101
chris@christopherpapa.com
(Via first class mail and email)